IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 29, 2002 Session

**BARRY C. MELTON v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Sevier County**
**No. 2000-264-III     Rex Henry Ogle, Judge**

_____

**No. E2001-02689-CCA-MR3-PC**
**December 4, 2002**
_____

The petitioner appeals the denial of post-conviction relief, arguing: (1) his "best interest" plea was not entered voluntarily and intelligently; and (2) trial counsel was ineffective in representing him at sentencing. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Charles R. Ray (at hearing and on appeal) and Jeffery S. Frensley (on appeal), Nashville, Tennessee, for the appellant, Barry C. Melton.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On April 10, 1997, the petitioner entered a "best interest" plea to four counts of aggravated sexual battery, a Class B felony, as a Range II multiple offender, and six counts of sexual battery, a Class E felony, as a career offender. The facts presented at the plea hearing established that during the month of July 1995, the petitioner took two brothers, ages thirteen and twelve, ice skating at Ober Gatlinburg. During the trip, the petitioner touched the boys' penises through their clothing and placed the twelve-year-old's hands over the petitioner's private area. According to the prosecutor, during that same month, in a separate incident, the petitioner invited a ten-year-old boy to his apartment where he touched the boy's penis and had the boy touch his penis.

The six counts of sexual battery involved the thirteen-year-old victim. Two counts of aggravated sexual battery involved the twelve-year-old victim and the remaining two counts of aggravated sexual battery involved the ten-year-old victim. The petitioner had several prior convictions for sexual offenses. The plea agreement provided for the trial court to determine the

lengths of the aggravated sexual battery sentences within twelve to twenty years, the range of punishment for a Range II offender. *See* Tenn. Code Ann. § 40-35-112(b)(2). As a career offender, the petitioner would receive six-year sentences for the sexual battery convictions. *See* Tenn. Code Ann. §§ 40-35-108(c), -112(c)(5). The agreement provided that the sentences for convictions involving the same victim would be served concurrently, but the trial court would determine whether the sentences for the offenses involving different victims would be served concurrently or consecutively. Therefore, the range of punishment for the total effective sentence for all offenses under the plea agreement was between twelve and forty-six years. Following a sentencing hearing, the trial court imposed an effective thirty-six-year sentence.

The petitioner contends his "best interest" plea was not entered voluntarily and intelligently. More specifically, the petitioner maintains his trial counsel did not adequately prepare for trial, but instead enlisted the petitioner's parents to convince him to enter the plea. The petitioner claims that his will was overborne, and he entered the plea against his wishes.

Further, the petitioner argues trial counsel was ineffective in presenting the testimony of clinical psychologist Dr. Diana McCoy at his sentencing hearing. We note that even if the petitioner's contentions regarding trial counsel's representation during sentencing were valid, he would not be entitled to have his "best interest" plea set aside provided his plea was otherwise voluntary. Instead, if his argument were meritorious, he would be entitled to re-sentencing under the terms of the plea agreement.

The post-conviction court denied the petition for post-conviction relief, finding the petitioner entered his plea knowingly and voluntarily, and that trial counsel provided the petitioner with effective assistance.


**PROOF AT POST-CONVICTION HEARING**


At the post-conviction hearing, the petitioner testified that every time he and trial counsel discussed whether he should plead guilty or go to trial, trial counsel told him he would lose if he went to trial and advised the petitioner he was facing up to 120 years in prison. The petitioner stated he told trial counsel he wanted to go to trial because he was not guilty. He said he never told his attorney he was guilty, although he told his attorney he may have made the victims feel uncomfortable.

The petitioner indicated he knew the detective to whom he a gave a statement would have offered damaging testimony at trial. The petitioner testified his trial counsel advised him that if he testified at trial, the prosecution would use his prior convictions to impeach him. The proof at the post-conviction hearing showed the petitioner had prior felony convictions for sexual offenses involving young boys in Madison County, Tennessee, and Arkansas. The petitioner, who is a college graduate, stated trial counsel advised him of his constitutional rights and kept him informed regarding the motions filed in his case.

-2-

The petitioner testified his trial counsel explained to him he had three choices: (1) plead guilty in exchange for an offered sentence of either twenty-four or thirty-two years; (2) go to trial and risk a sentence of up to 120 years in prison; or (3) enter the "best interest" plea pursuant to the plea agreement which was ultimately presented to the trial court. The petitioner indicated trial counsel said he knew the trial judge, and the petitioner could hope for a sentence of approximately eighteen or twenty years if he entered the "best interest" plea. The petitioner stated he knew the range of punishment under the agreement was between twelve and forty-six years, and that the trial judge would decide the exact sentence.

The petitioner stated no one threatened him, although his attorney spoke harshly to him. The petitioner described an incident in which trial counsel became upset when the petitioner telephoned counsel at home early one morning because the petitioner was being taken to court unexpectedly. The petitioner also said that during a meeting with him and his parents, his trial attorney swore, hit the table, and told the petitioner he needed to make a decision as to whether he was going to trial. The petitioner testified that in the days that followed, his trial attorney did not contact him regarding trial preparations. The petitioner stated that when he telephoned his parents a few days later, they told the petitioner he would lose if he went to trial. According to the petitioner, trial counsel came to the jail before he entered his plea and gave the petitioner a quick summary of what they were going to do that day. The petitioner conceded that, during the plea hearing, he told the trial court he had no complaints regarding his trial counsel.

The petitioner said he understood that a jury would determine whether he was guilty if he went to trial, and he conceded he understood his constitutional rights. He said he felt he had no choice but to enter the "best interest" plea because his attorney and his parents did not believe in his innocence.

Petitioner's trial counsel testified at the post-conviction hearing that he received discovery from the prosecutor, interviewed the detective who investigated the charges against the petitioner, reviewed the detective's notes regarding the petitioner's statement, reviewed the victims' statements, and spoke with two of the victims and the parents of all the victims. Trial counsel stated he also searched records, including records relating to the petitioner's prior convictions; met with the petitioner's father; and filed motions in preparation for trial. The attorney stated he met with the petitioner on several occasions. He said he reviewed the state's evidence with the petitioner, they discussed theories of defense, and they extensively discussed the petitioner's version of the events in question. The attorney testified he felt prepared to go to trial.

The attorney testified the petitioner vacillated on whether he wanted to go to trial. According to trial counsel, the petitioner did not deny the charges; instead, the petitioner said his actions were accidental and he did not intend to hurt the victims.

Trial counsel stated he advised the petitioner the only way to try the case successfully was for the petitioner to testify, and that the petitioner was subject to being impeached by his prior convictions if he were to testify. The attorney opined it would have been extremely difficult to try the petitioner's case successfully. Trial counsel stated the petitioner was facing potential punishment of over 100 years if he were convicted as charged, and that he advised the petitioner of

this possibility. Counsel feared the trial court would have imposed a greater sentence had petitioner gone to trial. Trial counsel testified he told the petitioner a guilty plea was the only option that made sense.

Trial counsel stated that approximately one week before the petitioner entered his plea, he met with the petitioner and his parents at the jail. During that meeting, the petitioner told his attorney he wanted to go to trial. The attorney said he later contacted the petitioner's parents and told them he felt it was in the petitioner's best interest to enter a guilty plea, and that it was the petitioner's only chance of being released from incarceration "in the next century."

The attorney testified the state offered the petitioner a sentence of twenty-four years, but that the petitioner instructed him to seek a better offer; as a result, the parties structured the plea agreement which was accepted by the trial court. The attorney testified he told the petitioner on several occasions that a "best interest" plea had the same effect as a guilty plea.

Trial counsel testified the petitioner made the decision to enter the plea and "absolutely knew what he was doing." The attorney stated the petitioner knew he had the choice to go to trial and understood his rights before he entered the plea.

Willard Melton and Shirley Humphrey, the petitioner's parents, testified at the post-conviction hearing that a few weeks prior to the petitioner's plea, they met with trial counsel and the petitioner at the jail; during that meeting, their son stated he wanted to go to trial. Melton stated trial counsel did not want to go to trial. He said trial counsel indicated the petitioner could receive a greater sentence if he went to trial, and that the petitioner was facing a potential sentence of 120 years. Humphrey testified trial counsel did not think the petitioner should go to trial because he did not think the petitioner would win, but he indicated the choice belonged to the petitioner. She stated the attorney told the petitioner he needed to make up his mind. Both witnesses indicated that at the conclusion of that meeting, they believed the case was going to be tried.

The petitioner's parents testified that over a week later, they had a telephone conversation with trial counsel in which trial counsel discussed the "best interest" plea with them. Melton testified trial counsel stated he had taken the bar exam with the trial judge, which would be helpful to the petitioner. Trial counsel denied this allegation and the trial judge, who presided at the post-conviction hearing, stated for the record that he did not take the bar exam with trial counsel. Trial counsel indicated he may have said he and the judge got along, and that the judge would listen to his arguments.

Willard Melton stated trial counsel thought the petitioner could receive a sentence as low as eighteen years if sentenced by the trial court. Melton recalled the state's initial offer to the petitioner was a sentence of thirty-two years, and trial counsel told them that if the trial court sentenced the petitioner under the "best interest" agreement, he would definitely receive a sentence of less than thirty-two years. Shirley Humphrey said trial counsel indicated the petitioner would receive a sentence of between ten and eighteen years. Trial counsel denied predicting the sentence the trial court would impose under the plea agreement and indicated he advised the petitioner that an eighteen-year sentence was a more realistic possibility than the twelve-year sentence the petitioner

-4-

requested. According to Melton, trial counsel asked them to speak with their son and convince him to accept the plea agreement. Melton said he and Humphrey advised their son to enter the plea.

Melton further testified the petitioner made the final decision to enter the plea and understood he had the right to go to trial. Humphrey testified her son wanted to go to trial and did not want to enter the "best interest" plea; she opined he did what she and his father thought best. She further stated she and Melton told their son it was his decision, and that he always understood it was his decision.

Psychologist Dr. Kenneth Anchor testified at the post-conviction hearing that the petitioner had a "pathologically high need for social approval," which caused the petitioner to capitulate to the will of authority figures such as his parents and his attorney. He described the petitioner as a person of average intelligence suffering from clinical depression. Dr. Anchor said that at the time the petitioner entered his plea, he was very conflicted about wanting a trial, but felt "worn down" by his parents and his attorney. The psychologist testified the petitioner knew he was facing a potential sentence of greater than 100 years. In Dr. Anchor's opinion, the petitioner's plea was not knowing, independent, natural, or voluntary because the petitioner did not "have it within him to maintain his view" when faced by pressure from his parents and, therefore, capitulated due to his need for social approval.

The proof as contained in the record established trial counsel presented the testimony of Dr. Diana McCoy, a clinical psychologist, at the petitioner's sentencing hearing. Dr. McCoy testified the petitioner was eligible for sex offender treatment, had the potential to be rehabilitated, and was a good candidate for treatment. However, she opined the petitioner was likely to reoffend without treatment, although he was not prone to violence. She stated the Department of Correction had a good treatment program for sex offenders, that the petitioner was motivated to receive treatment, and that while pedophilia was not a curable condition, it was something that could be controlled.

At the post-conviction hearing, trial counsel testified he reviewed Dr. McCoy's report in preparation for the sentencing hearing. The report indicated the petitioner was at risk for recidivism without treatment. Trial counsel stated the report also indicated some positive factors, including Dr. McCoy's opinion the petitioner was non-violent and could be helped by treatment. According to trial counsel, Dr. McCoy also testified the petitioner had not previously received the treatment she was recommending. The attorney indicated he offered Dr. McCoy's testimony in order to give the trial judge information to rely upon in the event the judge wanted to show leniency to the petitioner.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S.

668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S .W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; *see* Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner is not entitled to the benefit of hindsight; the petitioner may not second-guess a reasonably based trial strategy; and the petitioner may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the Supreme Court applied the two-part Strickland standard to ineffective assistance of counsel claims arising out of a guilty plea. The Court in Hill modified the prejudice requirement by requiring a petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. 474 U.S. at 59, 106 S. Ct. at 370; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle petitioner to relief. Tenn. Code Ann. § 40-30-210(f). The trial judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court's findings of fact are afforded the weight of a jury verdict, and this court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial judge. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this court. Burns, 6 S.W.3d at 461. The burden of establishing that the evidence preponderates otherwise is on petitioner. Henley, 960 S.W.2d at 579. However, the trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## B.    Analysis

The post-conviction court implicitly accredited the testimony of trial counsel. It found trial counsel fully investigated the charges against the petitioner and advised the petitioner regarding his option to enter into the plea agreement or proceed to trial. Further, the post-conviction court determined trial counsel's frank and dire predictions regarding the potential outcome of a trial did not constitute deficient performance. The post-conviction court found the petitioner was facing a

situation where there were no available defense witnesses or other exculpatory evidence, and that trial counsel's advice to the petitioner was accurate.

The judge presiding at the post-conviction hearing was the same trial judge who imposed the petitioner's sentence. At the close of the post-conviction hearing, he stated he considered Dr. McCoy's testimony that the petitioner had not received much treatment for his pedophilia when he imposed less than the maximum sentence allowed under the parties' plea agreement. The post-conviction court found trial counsel's performance was not deficient, and the psychologist's testimony was not prejudicial.

The post-conviction court's findings of fact are supported by the record. Further, its conclusions of law are without error. While the petitioner complained his trial counsel did not "believe in him," there is no showing that the petitioner's trial counsel provided anything other than competent, zealous, and effective representation. A subjective belief in the innocence of the accused on the part of a defense attorney is not a prerequisite to effective assistance of counsel, nor does defense counsel's candid, negative assessment of the potential outcome of a trial constitute deficient performance. The post-conviction court did not err in concluding the petitioner received effective assistance of counsel in entering his "best interest" plea.

Further, we conclude, based on our thorough review of the record, the post-conviction court did not err in making its determinations regarding trial counsel's performance during sentencing. It is clear trial counsel made a reasonable tactical decision to present the psychologist's testimony. Further, as the post-conviction court found, the evidence did not prejudice the petitioner. This argument is without merit.

**VOLUNTARINESS OF PLEA**

The petitioner's primary complaint as to the voluntariness of his plea appears to be that he entered the "best interest" plea under psychological pressure from his parents and his attorney. We find the post-conviction court did not err in concluding the petitioner's plea was entered voluntarily.

**A.      Standard of Review**

Our supreme court has stated the following:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. *Id.*

at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences.*" *Id.* at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).

Likewise, in Mackey, this Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea **. . . .**" 553 S.W.2d at 340.

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999).

## B.    Analysis

In the case at bar, the post-conviction court found the college-educated petitioner understood he had the option to proceed to trial or to enter into the plea agreement. The lower court further found the proof established the petitioner possessed average intelligence. It stated the evidence presented at the hearing established nothing except that the petitioner was fully informed. The post-conviction court noted the petitioner discussed his case with his attorney and his parents and understood "everything that was going on." The evidence presented at the post-conviction hearing supports the trial court's findings.

The transcript of the plea hearing indicates the trial court fully apprised the petitioner of his constitutional rights and the terms of the plea agreement before he entered his plea. During that hearing, the petitioner advised the trial court he had discussed the case with his attorney, he understood the plea agreement, and he understood his constitutional rights. The petitioner told the trial court no one had threatened him or made him any promises not announced as part of the plea agreement. At the sentencing hearing conducted five days later, the petitioner told the trial court, "I've made this best interest plea because I thought it was the most that I could do at this time in the best interest of these children, as well as myself."

At the post-conviction hearing, the petitioner testified his trial counsel advised him of his constitutional rights, the strength of the state's evidence against him, and the potential punishment he was facing. The petitioner indicated his trial attorney kept him informed regarding the status of his case and met with him several times while he was incarcerated. The petitioner further stated trial counsel apprised him of his choices to proceed to trial or to accept one of the plea agreements offered by the state. According to the petitioner's testimony, trial counsel accurately explained the terms of the plea agreement which he accepted. According to trial counsel, the petitioner understood his rights and his choices when he elected to enter the plea. The testimony of the petitioner's parents also indicated the petitioner made his own decision to enter the plea. The evidence does not preponderate against the findings of the post-conviction court. The petitioner's argument is without merit.

**CONCLUSION**

We hold the post-conviction court did not err in determining trial counsel provided the petitioner with effective representation nor in determining the petitioner entered his "best interest" plea knowingly and intelligently. Therefore, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE